ANDREWS, Judge.
This is an interlocutory appeal from a declaratory decree of the Circuit Court of Sarasota County construing certain terms of a 50-year lease between Charles Twain and Doris Twain, his wife, and Norman L. Twain, a single man, as Lessors, and Alstores Realty Corporation, as Lessee.
The property subject to the lease consisted of two noncontiguous tracts, and the Lessee in order to provide sufficient land for the project also leased other contiguous and adjacent lands.
The portions of the lease which give rise to the dispute are:
“1. Lessee shall pay or cause to be paid unto Lessors as fixed rental for said leased premises, the following sums: * * *.
“2. In addition to the fixed rental hereinabove provided to be paid, Lessee shall also pay or cause to be paid unto Lessors, as additional rental for said leased premises, each rental year a sum equal to one-tenth of one per cent (1/10 of 1%) of the ‘gross receipts’ in excess of Two and One-Half Million Dollars ($2,500,000.00) per rental year from any department store-operated and conducted on said leased premises by Lessee, Allied Stores Corporation, Maas Brothers, Inc., or any subsidiary of any of said corporation, by any sub-tenant or assignee of Lessee. * * *
“The term ‘gross receipts’ as used herein shall include all sales of merchandise and services made in or from the department store, or other buildings (Note: The words “or other buildings” were stricken and initialed at the time of the execution of the lease) on the leased premises owned or operated by any of the aforesaid parties, including sales in leased departments, * * *
“ * * * The term ‘gross receipts’' shall not include any sales of merchandise or services made in or from any premises which may be owned or leased by any of the aforesaid parties other than the department store on the herein demised premises.”
The Lessee constructed a department store containing approximately 80,000-square feet of usable floor space on one of the tracts subject to the lease, and used the other tract for parking. Within a few years the potential outlook for the store was such that the Lessee enlarged the store by approximately 57,000 square feet, approximately 25,000 of said square feet being on the Lessors’ property and the remaining on the adjoining property which the Lessee had leased from a party named Tyler.
The Tyler lease, as distinguished from the instant Twain lease, was for a fixed yearly rental without adjustment on the basis of percentage of sales.
When the addition to the store was built, copper spikes were placed in the building *603 "to mark the property line between the Twain and the Tyler properties. The Lessee approached the Lessor Twain and requested ■ an adjustment in the rent from 1/10 of 1% to 3/4 of 1/10 of 1% for sales of merchandise over $2,500,000.00 from the entire store, rather than encounter the trouble and ■ auditing expense of keeping records of sales as between the two properties.
The Lessors refused to make such an adjustment, and the Lessee proceeded to account to the Lessors on the basis of the sales on the property subject to the lease. Some departments of the store were entirely on one side of the property line, and some straddled the property line. There was no showing that the Lessee arranged to have non-sales departments, such as 'bookkeeping, receiving or stairs, on one •or the other of the two tracts.
The Lessors made demand for the additional rent based on the sales from the entire store regardless upon which property the sale was actually made, and threatened •default if such payment were not made.
The Lessee contends that the plain language of the lease requires them to account for and to pay the Lessors a percentage Tttpon the gross receipts from that portion of the store which is physically located upon the premises of the Twain lease; whereas in opposition thereto, the Lessor Twains contend that they are entitled to a percentage of the gross receipts from the entire department store operation including those departments of the store building which are physically Jpcated on other than the Twain premises.
The Lessee and the Lessors, being unable to resolve their differences of interpretation and the threat by the Lessors of cancellation of their lease and a claim for default under the terms thereof require an interpretation and adjudication of the rights of the respective parties as to the meaning of the language of paragraph 2 of said lease agreement, and the Lessee submitted the dispute to the court under the provisions of Florida Statutes Annotated Chapter 87 providing for declaratory decrees.
The coiirt after an extensive trial found that an ambiguity existed in the lease, and considered parol evidence therefor to determine the intention of the parties. It further found that the lease was largely the product of the attorneys for the Lessee, particularly the provisions providing for rental payments, and that the Lessee through its attorneys could easily have avoided the problems by dearly spelling out the intention of the parties. Accordingly, the court found that it was the intention of the parties to include in determination of additional rentals all sales made in and from the department store, whether on or off the Lessor Twains’ property.
A careful reading of the provisions of the lease leads us to the opposite conclusion. Paragraph 1 provides for “rentals for said leased premises.” In paragraph 2 the words are found “as additional rental for said leased premises,” and fürther the words “rental per year from any department store operated and conducted on said leased premises.” In defining the term “gross receipts,” it is provided to “include all sales of merchandise and services made in or from the department store on the leased premises.” The “leased premises” can be only the property as described in the lease, or the property owned by the Twains. 24 Words & Phrases 490. These words cannot be construed to include rental for property not owned by the Lessors. It is possible such a provision could be provided. Additional rental can be computed on the basis of numerous factors outside the record, such as based on the cost of living index. However,' such was not done in this case, and the rental must be based on the income received from the use of the leased premises.
The Lessors in seeking additional percentage rental must base their claim on the covenants of the lease. The 1/10 of 1% additional rentals on sales in excess of $2,500,000 was to be paid according to the *604 terms of the lease on all sales of merchandise and services made in and from the department store on the leased premises subject to certain exceptions, which are not at issue in this proceeding. The Lessee has accounted to the Lessors for the sales in and from the department store on the leased premises. The covenants of the lease can only be construed to include rentals on sales and services and merchandise in or from the store on the leased premises.
A lease with almost an exact set of terms, conditions and circumstances was before the New York Court of Appeals in the case of Mutual Life Insurance Company v. Tailored Woman, Inc., 1955, 309 N.Y. 248, 128 N.E.2d 401. In the New York case the lease was for store space on the first, second and third floors in an existing building, and the additional space rented under separate lease was from the same landlord. The percentage lease on the first three floors provided that additional rental should be computed on sales on and from the demised premises. The Lessee later rented the fifth floor under a lease which did not contain any provision for additional percentage rent. This case held that the landlord was not entitled to the percentage additional rental on the space rented by the Lessee for the fifth floor. The court did, however, say that sales upon which a commission was paid to a sales person in a department in the main store would be subject to the additional percentage provisions of the lease as having been made from the leased premises.
It is true that the Lessee could re-arrange the departments in the store in such manner as to place the business office, the receiving department, stairs and similar non-sales departments in the section of the store which was under a percentage lease, and the retail sales departments in the other section. The record does not reveal any such unconscionable diversion of business from the percentage leased premises as was the situation in Cissna Loan Co. v. Baron, 1928, 149 Wash. 386, 270 P. 1022.
All other issues which were raised on this appeal have been considered by the Court, but in view of this holding, discussion thereof is not necessary.
Reversed.
ALLEN, Acting C. J., and WHITE, J., concur.