GARFIELD DAVIS AND WIFE, LONA MAE DAVIS v. ROY LEE McREE AND WIFE, DEAN C. McREE, FIRST SOUTHERN SAVINGS AND LOAN ASSOCIATION, AND THOMAS J. WILSON, TRUSTEE

No. 98

(Filed 5 March 1980)

1. **Landlord and Tenant § 13.2; Vendor and Purchaser § 2.3— lease with option to purchase—extension of lease—extension of option**

Where the original lease of property containing an option to purchase extended from 31 January 1972 through 31 January 1974, and the parties later placed at the end of the typewritten lease a handwritten agreement stating that "The term of this lease shall be from Jan. 31, 1974 through Jan. 31, 1976," the trial court properly determined that the handwritten endorsement incorporated the original lease agreement in its entirety, including the option to purchase, since it was clear that the parties intended to extend the option by their subsequent acts, including defendants' exercising of the option and plaintiffs' having the deed of purchase drawn up.

Davis v. McRee

2. **Vendor and Purchaser § 1.3— lease with option to purchase—new term of lease—application of rental payments**

Where the parties' lease contained an option to purchase and provided that "all payments made as rental under this lease shall . . . be applied as a part of the purchase price," and where the term of the parties' original lease expired on 31 January 1974 and they later added a handwritten agreement that "The term of [the new] lease shall be from Jan. 31, 1974 through Jan. 31, 1976," the latter agreement created a new estate for years which was separate and distinct from the previous one; therefore, only rental sums paid subsequent to 31 January 1974 could be applied against the purchase price of the premises in question when defendants exercised their option to purchase.

ON discretionary review to review the decision of the Court of Appeals, reported in 40 N.C. App. 238, 252 S.E. 2d 259, finding no error in the judgment entered by *Ferrell, J.,* at the 21 November 1977 Session of CATAWBA Superior Court. This case was docketed and argued as No. 121 at the Fall Term 1979.

Plaintiffs and defendants entered into a lease agreement in December, 1971, whereby defendants agreed to lease certain real property from plaintiffs for a term beginning on 31 January 1972 and ending 31 January 1974. The agreement called for rent of $125.00 per month. Contained in the agreement was an option to purchase which provided as follows:

> OPTION: During the term of this Lease, the Lessee shall have the right to purchase the Demised Premises for a purchase price of Twelve Thousand ($12,000.00) Dollars; all payments made as rental under this lease shall, in the event this option is exercised, be applied as a part of the purchase price.

The agreement had no extension or renewal provision.

Defendants continued in possession of the property following the expiration date of the lease and continued to make rental payments until 13 August 1974. On that date, the parties met and added the following language at the end of the typewritten lease agreement of 4 December 1971:

The term of this lease shall be from Jan. 31, 1974 through Jan. 31, 1976.

August 13, 1974

Agreement
s/ Garfield Davis
s/ Lona Mae Davis
s/ Dean C. McRee

Several months prior to November, 1975, defendants indicated their intention to exercise the option to purchase the property. Defendants arranged to borrow $7,500.00 at First Southern Savings and Loan in Lincolnton, North Carolina. Plaintiffs executed a deed to the property on 13 November 1975, and the deed was recorded 14 November 1975. Upon examining title to the property, the attorney for defendant First Southern Savings and Loan discovered a deed of trust in favor of First Federal Savings and Loan in the sum of $8,700.00.

Defendants then computed the balance due on the purchase price by applying all rents which had been previously paid against the total purchase price in accordance with the option terms contained in the lease dated 4 December 1971. Defendants tendered the amount of $4,750.00 to plaintiffs. Plaintiffs refused the tender and instituted this action to have the deed and deed of trust cancelled on the grounds that they were recorded without plaintiffs' authorization and were not supported by adequate consideration.

At trial, upon issues submitted to it by the judge, the jury found that defendants had exercised the option, and that the balance of the purchase price was $4,750.00. Plaintiffs appealed and the Court of Appeals, in an opinion by Judge Arnold, Judges Parker and Webb concurring, found no error. We allowed plaintiffs' petition for discretionary review, pursuant to G.S. 7A-31, for a limited purpose on 10 September 1979. We subsequently allowed all issues properly presented to the Court of Appeals to be brought before this Court for determination.

*Williams, Pannell & Lovekin, by Martin C. Pannell, for plaintiffs.*

*Lefler, Gordon & Waddell, by Lewis E. Waddell, Jr., for defendants McRee.*

*Wilson & Lafferty, P.A., by John O. Lafferty, Jr., for defendants Wilson and First Southern Savings & Loan Association.*

BRANCH, Chief Justice.

[1]  Plaintiffs assign as error the trial court's ruling as a matter of law that the handwritten endorsement of 13 August 1974 incorporated the original lease agreement in its entirety, including the option to purchase. On this matter, the trial judge ruled:

> . . . that the lease and all of its contents was [sic] in effect and binding between the parties up to and through January 31, 1976, and that each and every of the clauses of the lease were binding upon the parties upon any event covered by the lease, *specifically that the option provisions of the lease applied* during the period from January 31, 1974, through and including January 31, 1976. [Emphasis added.]

Plaintiffs contend that the option to purchase died with the expiration of the term of the original lease on 31 January 1974 and that the new agreement of 13 August 1974 was not effective to revive the option.

Defendants, on the other hand, maintain that the intent of the parties should control the interpretation of the August agreement. They contend that the parties intended to incorporate into the new agreement all of the provisions of the prior lease.

The Court of Appeals held that the intent of the parties controls the construction of the August agreement. It held further that the parties intended to extend the option to purchase as well as the terms of the original lease agreement.

It is well settled that the parties to a lease may by subsequent agreement extend the time for which the lease is to run. 51C C.J.S. *Landlord and Tenant* § 55 (1968). The rules governing the interpretation of written instruments generally apply with equal force to the construction of provisions for renewals or extensions of leases. 50 Am. Jur. 2d *Landlord and Tenant* § 1160

Davis v. McRee

(1970). The primary purpose in all events is to ascertain the intent of the parties to the subsequent agreement. *Id.*

We have examined the law governing extensions and renewals of lease contracts which include options to purchase and have found it to be far from well settled. The rule most often stated is that, in the absence of a renewal term in the original lease, "where the tenancy is continued by subsequent agreement, the continuance of the option depends upon the construction to be placed upon that agreement. If it refers to the original lease, the option is also extended. However, if the subsequent agreement merely continues the tenancy, although upon the terms fixed by the original lease, it will not extend an option to purchase contained in the original lease." Annot., 15 A.L.R. 3d 470, 473-74 (1967); 49 Am. Jur. 2d, *supra* § 383.

In our view, this statement of the law is far more confusing than it is enlightening, and the decisions of other courts confronting the issue reflect this confusion. *See e.g., Grummer v. Price,* 101 Ark. 611, 143 S.W. 95 (1912); *Parker v. Lewis,* 267 Pa. 382, 110 A. 79 (1920). The better view, and the one to which we adhere, is that the ultimate test in construing any written agreement is to ascertain the parties' intentions in light of *all* the relevant circumstances and not merely in terms of the actual language used. "Where the parties have made a separate agreement extending the lease, the agreement must be examined in light of all the circumstances in order to ascertain the meaning of its language, with the guide of established principles for the construction of contracts, and in the light of any reasonable construction placed on it by the parties themselves." 51C C.J.S., *supra* § 68a. The parties are presumed to know the intent and meaning of their contract better than strangers, and where the parties have placed a particular interpretation on their contract after executing it, the courts ordinarily will not ignore that construction which the parties themselves have given it prior to the differences between them. *Preyer v. Parker,* 257 N.C. 440, 125 S.E. 2d 916 (1962).

With this in mind, we note that the language of the handwritten August agreement here does not tend to shed any light on whether the parties intended to extend the option to purchase. However, evidence of subsequent acts by both parties clearly indicates their intent to extend the option. Defendants in fact *exer-*

*cised* the option, and plaintiffs proceeded to have the deed of purchase drawn up. As plaintiff Garfield Davis himself testified, "I went down there to sign the deed and get the money I felt was due under the lease." It is evident from the conduct of the parties here that they intended to incorporate the option to purchase in their August agreement to extend the lease. We so hold.

[2] Plaintiffs' next assignment of error, and the hub of the controversy here, relates to the computation of the amount due on the purchase price. The trial judge instructed the jury to determine the amount due by deducting from the purchase price "any monthly sums paid to the plaintiffs by the defendant during the entire period of the lease." Plaintiffs contend that the August agreement was a new and distinct lease and that only the rental sums paid subsequent to 13 August 1974 should be applied against the purchase price. In the alternative, plaintiffs argue that only those sums paid subsequent to 31 January 1974 should be set off against the purchase price.

Defendants argue that the August agreement operated to extend the original agreement in its entirety and consequently, the purchase price should be offset by all rental payments from 31 January 1972 until the time they exercised the option.

The parties to a lease may provide that the commencement of the lease term operate retrospectively. *Milbourn v. Aska,* 81 Ohio App. 79, 77 N.E. 2d 619 (1946). The parties here provided explicitly that the term of the new lease would be from 31 January 1974 through 31 January 1976. The sole question remaining is whether this "term" is merely a continuation of the original lease term, or is in effect a new and distinct lease "term."

The original lease in this case provided for a leasehold estate for years. J. Webster, *Real Estate Law in North Carolina* § 65 (1971). Such an estate terminates upon the expiration of the term fixed by the lease. *Id.* § 77. Thus, the term of the original lease ended on 31 January 1974, and the option was not exercised while the original lease was in effect. *See Product Co. v. Dunn,* 142 N.C. 471, 55 S.E. 299 (1906). The parties specifically agreed that "[t]he term of [the new] lease shall be from Jan. 31, 1974 through Jan. 31, 1976." The latter handwritten agreement created a new estate for years which was separate and distinct from the previous one. We therefore hold that the August agreement was, in effect, a

new lease, and that only those rental sums paid subsequent to 31 January 1974 are to be applied against the purchase price. *See Gattavara v. Cascade Petroleum Co.*, 27 Wash. 2d 263, 177 P. 2d 894 (1947).

The decision of the Court of Appeals is affirmed in part, reversed in part and this case is remanded to that court with direction that it be returned to Catawba Superior Court for entry of judgment in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.